```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

IN RE:                              )
                                    )
AMRIK S. PABLA                      )      CIVIL ACTION NO.
                                    )      21-10646-DPW
          Debtor-Appellant,         )
                                    )
v.                                  )
                                    )
GURNAM SINGH & ANISH RAMDEV,        )
                                    )
          Appellees,                )
                                    )
------------------------------------
                                    )
IN RE:                              )
                                    )      CIVIL ACTION NO.
AMRIK S. PABLA,                     )      21-10647-DPW
                                    )
          Debtor-Appellant,         )
v.                                  )
                                    )
ANISH RAMDEV,                       )
                                    )
          Appellee.                 )
```

MEMORANDUM AND ORDER
January 25, 2022

A debtor in bankruptcy proceedings may obtain a fresh start in exchange for, among other things, full disclosure of his financial condition and the status of his assets in the period leading up to the filing of his petition. In the underlying consolidated adversary proceedings that provide the basis for this appeal, the bankruptcy court found that the Debtor-Appellant failed to explain satisfactorily the disposition of his assets as required by 11 U.S.C. § 727(a)(4)(A).

Consequently, the court denied the Debtor-Appellant a discharge of his debts.  I will affirm the bankruptcy court's judgment.

## I. BACKGROUND

On July 16, 2019, the Debtor-Appellant, Amrik S. Pabla and his wife, Dalwinder Pabla, filed for bankruptcy.  The appellees Gurnam Singh and Anish Ramdev are secured creditors (the "Creditors") with judgment debts against Mr. Pabla.  Mr. Singh and Mr. Ramdev separately filed objections under 11 U.S.C. §§ 727(a)(2), (a)(3), and (a)(4) to the discharge of the debts owed them.  The objections were heard in a consolidated two-day trial.

The bankruptcy court provided a thoughtful and detailed oral decision, concluding that Mr. Pabla was not entitled to his discharge under 11 U.S.C. § 727(a)(4) but denying relief as to Mrs. Pabla.  The court found the debtors made materially false statements under oath and "as to [Mr. Pabla] the statements were made with the requisite intent."  These statements concerned two separate issues: Mr. Pabla's financial interest in property he owns in Somerville, Massachusetts, and his financial interest in Manraj, Inc., which owned a restaurant that Mr. Pabla operated.

Mr. Pabla timely appealed to this Court.  Mr. Singh and Mr. Ramdev did not cross-appeal the judgment as to Mrs. Pabla.

## II. STANDARD OF REVIEW

On appeal of a bankruptcy court's order, a reviewing court

2

may affirm, modify, or reverse a bankruptcy judge's judgment or remand with instructions for further proceeding.  *See* Fed. R. Bankr. P. 8013.[1]  Although I must accept the bankruptcy court's findings of fact unless clearly erroneous, I review its conclusions of law *de novo*.  *See TI Fed. Credit Union* v. *DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995).  "The application of the Bankruptcy Code to a particular case poses a mixed question of law and fact, which [I] review[] for clear error unless the bankruptcy court's analysis was based on a mistaken view of the

---

[1] Appeals from judgments of a bankruptcy court may be directed to any of three reviewing courts under 28 U.S.C. § 158.  These include the district court for the relevant district, *id.* at § 158(a); a bankruptcy appellate panel, if authorized for the relevant judicial circuit, *id.* at § 158(b)(1); and by the courts of appeals for further appellate review of appellate decisions by a district court or a bankruptcy appellate panel.  *Id.* at 158(d).  The Debtor-Appellant chose in this appeal the district court in which to lodge his appeal from the bankruptcy court's judgment.

Part VIII of the Fed. R. Bank. P. is intended to govern each of these avenues of appeal.  *See generally* Fed. R. Bankr. P. 8001(a).  The court of appeals, if called upon to provide further appellate review, will "cede no special deference to the district court's initial review of the bankruptcy court's decision."  *In re Bank of New England Corp.*, 364 F.3d 355, 361 (1st Cir. 2004) (citing *Gannett* v. *Carp* (*In re Carp*), 340 F.3d 15, 21 (1st Cir. 2003); *see also In re Merrimac Paper Co., Inc.*, 420 F.3d 53, 58 (1st Cir. 2005) (although serving as "second tier of appellate review," court of appeals reviews "directly the bankruptcy court's determination, scrutinizing its findings of fact for clear error and its conclusions of law de novo").  A similar approach to deference is deployed by the court of appeals in review of bankruptcy appellate panel appeals.  *In re O'Donnell*, 728 F.3d 41 (1st Cir. 2013) ("We are the second set of reviewers here — the BAP was the first, obviously.  But we give the BAP's decision no special deference.").

legal principles involved." *Gannett v. Carp (In re Carp)*, 340 F.3d 15, 22 (1st Cir. 2003).

### III. APPEAL

Under Chapter 7 of the Bankruptcy Code, a debtor may receive a discharge that absolves him of debts that arose before the filing of the bankruptcy case. *See generally* 11 U.S.C. § 727(a). However, a debtor cannot obtain a discharge unless he provides a full and fair accounting of his financial condition and "satisfactorily explain[s] the disposition of his assets during the period leading up to the filing of his bankruptcy petition." *Harrington v. Simmons (In re Simmons)*, 810 F.3d 852, 855 (1st Cir. 2016).

The Bankruptcy Code requires the debtor to "list as assets of the estate in bankruptcy 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Massachusetts v. Sohmer (In re Sohmer)*, 434 B.R. 234, 251 (Bankr. D. Mass. 2010) (quoting 11 U.S.C. § 541(a)). Accordingly, § 727(a)(4)(A) provides that a debtor may be denied a discharge if "(1) [he] made a false statement under oath in the course of his bankruptcy proceeding; (2) he did so knowingly and fraudulently; and (3) the false statement related to a material fact." *Hannon v. ABCD Holdings, LLC (In re Hannon)*, 839 F.3d 63, 70 (1st Cir. 2016) (quoting *Perry v. Warner (In re Warner)*, 247 B.R. 24, 26 (1st Cir. BAP 2000)).

Mr. Pabla challenges both bases of the bankruptcy court's decision to deny his discharge. First, he argues the court erred in its assessment of his failure to disclose rental income from the Somerville property. Second, he argues the court erred in its assessment of his failure to disclose his pre-filing interest in Manraj, Inc., as well as the transfer of that interest before the bankruptcy proceedings began.

### A. *Somerville Property*

Mr. Pabla says that the bankruptcy court erred when it found denial of discharge was appropriate based on Mr. Pabla's failure to disclose rental income from real estate he owned in Somerville, Massachusetts. He contests directly the materiality element of the bankruptcy court's analysis; his argument also touches indirectly on whether his omission was knowing and fraudulent. I will review the court's analysis with respect to both elements.

At the outset, I must clarify the applicable standard of review. Mr. Pabla asserts that the bankruptcy court erred in its analysis of the Somerville property as a matter of law, and therefore that I must perform my review *de novo*. However, he presents no explanation as to why the court's reasoning was purely one of law and not also one of fact. The court applied 11 U.S.C. 727(a)(4) to the facts of the case. The conclusion before me then was a mixed one of fact and law, with no

5

"mistaken view of the legal principles involved," and so I review for clear error.  *See In re Carp*, 340 F.3d at 22.  Mr. Pabla challenges heavily fact-dependent reasoning, with minimal legal argument of his own.  *Cf id.* at 25 (noting, in confirming that review for clear error was appropriate, that appellant took "dead aim at the district court's factual findings" in a mixed fact-law question).

    1.   <u>Materiality</u>

As to materiality, Mr. Pabla contends that, as of the filing date in this case, rental income from the Somerville property was not being collected and he did not know if he would thereafter be collecting rental income from the property.  He concludes, without citation to relevant authorities, that any rental income from the Somerville property was not material because (1) the property itself was already disclosed; (2) any lack of income due to the Pablas moving into the property would not be property of the estate; and (3) no objections had been made to the Pabla's claim of a homestead exemption in the property.

A false oath is "material" if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  *Boroff* v. *Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987) (quoting *Chalik* v. *Moorefield*

6

*(In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)). This definition reflects the proposition that a successful bankruptcy system "hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Id.* at 110 (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)). Thus, "the threshold to materiality is fairly low." *Lussier* v. *Sullivan (In re Sullivan)*, 455 B.R. 829, 839 (1st Cir. BAP 2011) (quoting *Cepelak* v. *Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000)). Bankruptcy courts have specifically and consistently held that "any omission of income from a debtor's statements is material." *Donahue* v. *Donahue (In re Donahue)*, BAP No. NH 11-026, 2011 WL 6737074, at *12 (1st Cir. BAP 2011) (quoting *Benchmark Bank* v. *Crumley (In re Crumley)*, 428 B.R. 349, 358-60 (Bankr. N.D. Tex. 2010)); *see also Mazzone* v. *Mazzone (In re Mazzone)*, 510 B.R. 439, 445 (Bankr. D. Mass. 2014) (finding an omission of $10,200 to $11,400 in rental income to be material in Chapter 7 bankruptcy proceedings).

I am satisfied that the bankruptcy court has committed no clear error in concluding that Mr. Pabla's omission of income from the Somerville property was material. When Mr. Pabla filed for bankruptcy, seven students were leasing the Somerville property and at least some of those students remained as tenants throughout the bankruptcy proceeding. The rental income plainly "bears a relationship to the bankrupt's . . . estate" in so much

as it constituted significant income to the Pablas for years leading up to the bankruptcy proceedings. *In re Tully*, 818 F.2d at 110-11 (quoting *In re Chalik*, 748 F.2d at 618). In 2017, the property generated nearly $75,000 in gross rental income and at least $42,000 in 2018.

Mere disclosure of the property's existence did not suffice to bring to light the rental income that the property continued to generate throughout 2018 and 2019. Whether or not the creditors objected to the homestead exemption in the property and whether or not the Pablas intended to move into the residence (thus cutting off the rental income) after the bankruptcy proceedings were concluded does not affect the materiality of the rental income collected from the property in 2018 and 2019.

2. Intent

As to whether Mr. Pabla's omission was knowing and fraudulent, Mr. Pabla does not outright challenge the court's decision on this point, but — as observed in the previous Section of this Memorandum — he does say rent from the Somerville property "was not being collected as of the filing date of this case." He also says he "did not know if he would be collecting rental income from the Somerville [property] after the filing of this case and if so, [he] asse[r]ts that said post-petition rental income would not be property of the

8

estate." Without saying as much directly, these points suggest that Mr. Pabla felt he had reason not to disclose this information, and consequently that his omission was neither knowing nor fraudulent.

Again, I review for clear error, this issue being a mixed question of fact and law. The First Circuit has framed the question broadly with its repeated declaration that "[t]he determination of actual intent is a finding of fact," because "the intent issue will turn on the credibility and demeanor of the debtor, and in such circumstances, [reviewing courts] defer to the bankruptcy court's conclusions." *Premier Capital, Inc.* v. *Diamond (In re Diamond)*, 106 F. App'x 73, 76 (1st Cir. 2004) (quoting *Groman* v. *Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir. 2002)).

The requirement of a knowing and fraudulent false oath is met "if the debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.'" *Nickless* v. *Fontaine (In re Fontaine)*, 467 B.R. 267, 272 (Bankr. D. Mass. 2012) (quoting *Lussier* v. *Sullivan*, 444 B.R. 1, 8 (Bankr. D. Mass. 2011)). While a court should not deny a debtor a discharge if a false statement or omission was simply a mistake or if the error is technical, *see JP Morgan Chase Bank, N.A.* v. *Koss (In re Koss)*, 403 B.R. 191, 211 (Bankr. D. Mass. 2009), "reckless disregard may nonetheless be found based on the

9

'cumulative effect of a series of innocent mistakes,'" *In re Fontaine*, 467 B.R. at 272 (quoting *In re Koss*, 403 B.R. at 213); *see also In re Tully*, 818 F.2d at 112 ("'[R]eckless indifference to the truth' . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." (quoting *Diorio v. Kreisler-Borg Construction Co. (In re Diorio)*, 407 F.2d 1330, 1331 (2d Cir. 1969) (per curiam)).

As with the materiality issue, I am satisfied that the bankruptcy court committed no clear error in its determination that the challenged omission was knowing and fraudulent. The court carefully observed discrepancies in Mr. Pabla's testimony concerning the Somerville property and, based on his "frequent evasiveness, professed lack of knowledge, and lack of credibility," found there was "no plausible alternative explanation sufficient . . . to overcome the inference of fraudulent intent." I defer to this factual analysis and find no clear error in the court's reasoning.

### B.   *Manraj, Inc. and Bukhara Restaurant*

Mr. Pabla next challenges the bankruptcy court's assessment of his failure to disclose prior holdings in Manraj, Inc. and his transfer of those holdings. As of at least 2018, Mr. Pabla was a forty percent shareholder of Manraj, Inc., which owned a restaurant he operated called Bukhara. It appears he transferred his holdings at some point before filing for

bankruptcy. In April 2019, Mr. Pabla's son became the owner of a restaurant named Bukhara after the original Bukhara restaurant closed in March 2019. *Id.* at 17:2-13. The new Bukhara restaurant is at a location near the original and was advertised as a relocation. As with his argument about the Somerville Property, Mr. Pabla directly raises an argument about materiality here but also touches on issues of intent. I address both elements in turn.

Again, at the outset, I clarify the standard of review. Although Mr. Pabla contends that he is attacking the court's conclusions of law, and therefore that I must conduct a *de novo* review, he plainly in fact attacks the court's analysis as a mixed question of fact and law, an analysis that relies on established First Circuit precedent. Indeed, as before, Mr. Pabla focuses principally on factual matters in his briefing. Consequently, I conduct a review for clear error by the bankruptcy court. *See In re Carp*, 340 F.3d at 22.

1. <u>Materiality</u>

Mr. Pabla makes two points as to materiality. First, he says he owned no stock in Manraj, Inc. at the time of filing. Second, he says that there was no evidence to support the bankruptcy court's conclusion that the bankruptcy trustee "would certainly have considered . . . interests and transactions"

11

concerning Manraj, Inc. "in investigating the affairs of the Debtors."

I observe the same liberal standards for materiality described previously and find no clear error in the court's reasoning on this issue. The omissions concerning Mr. Pabla's ownership and transfer of interest in Manraj, Inc. — associated with Mr. Pabla's son coming to operate a restaurant apparently related to the one that Mr. Pabla had operated pre-bankruptcy — "bears a relationship to the bankrupt's business transactions . . . or concerns the discovery of . . . business dealings." *In re Tully*, 818 F.2d at 111 (quoting *In re Chalik*, 748 F.2d at 618). This conclusion holds regardless of the court's finding that Mr. Pabla did not own stock as of the filing date. "[V]aluation is not really the point. 'Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions.'" *In re Tully*, 818 F.2d at 110 n.4 (quoting *In re Mascolo*, 505 F.2d at 277-78). Here, the fact that Mr. Pabla had owned a significant share in Manraj, Inc. in 2018 and had transferred that share at some point before filing for bankruptcy in 2019 was certainly material to the creditors' efforts in investigating the pertinent affairs of the debtor.

2.  <u>Intent</u>

Mr. Pabla does not explicitly challenge the court's conclusions about his intent, but he does appear to deflect culpability by saying the initial omission of his prior holdings in Manraj, Inc. was done "inadvertently."

As explained with reference to the Somerville property, the bankruptcy court's findings on intent are findings of fact that I review for clear error.  I find no such error here; rather, there was ample evidence to support the court's conclusion that Mr. Pabla was recklessly, if not intentionally, indifferent to the truth.

Mr. Pabla failed to disclose his prior interest in Manraj, Inc. as requested in the Statement of Affairs.  And despite subsequently amending the Statement of Affairs to reflect his prior interest, he failed to disclose that he had transferred that interest, a required disclosure that would be necessary in this circumstance.

The bankruptcy court found "[i]t was evident from the evasiveness and lack of candor observed in the testimony of [Mr. Pabla's son] and [Mr. Pabla] regarding the establishment of the new Bukhara that each of those witnesses desired to deflect any scrutiny of [the] circumstances in opening the new restaurant." Mr. Pabla merely stated that the omissions were oversights but failed otherwise to provide an explanation.  The court found

13

that his son was similarly "evasive when asked for details" about whether Mr. Pabla had given him any money in connection with the new business.  Indeed, they both gave directly conflicting answers in response to how the bankrupt's son had obtained funding to open the new Bukhara.

Further, the court noted that the Pablas had been the subject of collection actions by creditors and by taxing authorities at around the same time that Mr. Pabla had transferred his interest in Manraj, Inc.  Thus, the Court reasonably inferred that Mr. Pabla "took actions . . . to facilitate his son's acquisition of the new Bukhara and to establish his son in the restaurant business clear from creditor claims that were threatening the debtors."

### III. CONCLUSION

For the reasons set forth above, I AFFIRM the judgment of the bankruptcy court denying a discharge to the Debtor-Appellant.

> */s/ Douglas P. Woodlock*
> DOUGLAS P. WOODLOCK
> UNITED STATES DISTRICT JUDGE